## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**TERRY PENISTER**                                                                                       **PLAINTIFF**
**ADC #092828**

V.                            NO. 4:18-cv-00514-BSM-ERE

**MARK CASHION,** *et al.*                                                                    **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.   Procedures for Filing Objections**

This Recommendation has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this Recommendation. If no objections are filed, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

**II.   Background**

Plaintiff Terry Penister, an inmate at the Wrightsville Unit of the Arkansas Division of Correction, filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 2*. Mr. Penister claims that on October 13, 2016, Defendants Mark Cashion,

James Shipman, Michael Lowe, Darren Thomas, and Byron Brown failed to protect him from being assaulted by another inmate.[1] *Docs. 2, 4, 23, 24*.

Pending before the Court is Defendants' motion for summary judgment. *Doc. 65*. In their motion, Defendants argue that: (1) they are entitled to sovereign immunity on Mr. Penister's claims against them in their official capacity for money damages; (2) Mr. Penister's claims are barred by respondeat superior; and (3) they are entitled to qualified immunity on Mr. Penister's claims against them in their individual capacity. Mr. Penister has responded to Defendants' motion and Defendants have replied. *Docs. 70, 71, 72, 73*. For the reasons explains below, Defendants' motion for summary judgment (*Doc. 65*) should be GRANTED.

In addition, Defendant Thomas has not yet been served in this case. On September 25, 2019, James Wyatt was appointed to represent Mr. Penister to help effectuate service on Defendant Thomas. *Doc 36*. Mr. Penister had until September 27, 2021 to effectuate service on Defendant Thomas. *Doc. 51, 62*. Because Mr. Penister has failed to timely effectuate service for Defendant Thomas, the Court now recommends that Mr. Penister's claims against Defendant Thomas be DISMISSED, without prejudice.

---

[1] The Court previously dismissed Mr. Penister's claims against Lewis Young based on his failure to fully exhaust his administrative remedies. *Doc. 60*.

### III. Discussion

#### A. Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

#### B. Factual Background[2]

During all times relevant to this lawsuit, Mr. Penister was housed in 9 barracks at the Wrightsville Unit. *Doc. 65-1 at 9*. On October 13, 2016, inmate Brian Houston

---

[2] The facts are taken from Mr. Penister's deposition testimony.

was assigned to the barracks floor crew.[3] *Id. at 10*. At approximately 5:10 p.m., inmate Houston assaulted Mr. Penister striking him twice on the head with a pipe. *Id. at 9,19*. Mr. Penister's back was towards inmate Houston when inmate Houston attacked him. *Id*. Mr. Penister acknowledges that, although Officer Thomas allowed inmate Houston to enter the barracks (*Id*. at 8), the ADC Defendants were not present during the attack. *Id. at 11, 17*.

Several events that occurred in the days prior to the attack are relevant to this discussion.

Nearly a week before the attack, Mr. Penister tested positive for nicotine. *Doc. 65-1 at 6*. Two days before the attack, Mr. Penister told Defendant Shipman that inmate Justin Thornhill, the Warden's "domestic";[4] was responsible for distributing tobacco to inmates in his unit. *Id. at 7*. According to Mr. Penister, inmate Thornhill had tobacco shipped to Warden Cashion's home for inmate Thornhill to distribute. *Id. at 13*. No other ADC Defendants were present during Mr. Penister's conversation with Defendant Shipman. *Id. at 14*. Although Mr. Penister concedes that he did not

---

[3] Mr. Penister alleges that Defendant Brown, as inmate Houston's floor crew supervisor, should have escorted inmate Houston into the barracks. He claims that Defendant Brown breached security protocol in allowing inmate Houston into 9 barracks on the date and time at issue. *Doc. 65-1 at 12*. However, Mr. Penister also testified that, although inmate Houston was assigned to floor crew on the date in question, because supervisors are relieved of their duties at 5:00 p.m., inmate Houston was not working on the floor crew and Defendant Brown was not supervising the floor crew at 5:10, the time of the attack. *Id. at 10*.

[4] Mr. Penister explains that the Warden's "domestic" is responsible for cleaning the Warden's house daily. *Id. at 6*.

witness Defendant Shipman share this information with any other ADC official or inmate, he believes that Defendant Shipman must have done so. *Id*. at 15.

On the day before the attack, ADC officials placed Mr. Penister in a holding cell before his scheduled disciplinary hearing for tobacco use. *Id. at 6*. The same day, ADC officers also "locked up" inmate Thornhill. *Id*. While inmate Thornhill was being held in the same holding cell as Mr. Penister, inmate Houston, inmate Thornhill's "lover" (*Id. at 13*), came to see inmate Thornhill. According to Mr. Penister, inmate Houston stated, "when I find out who is behind it, I'm going to take care of it." *Id. at 7*.

On the day of the attack, another inmate (name unknown) told Mr. Penister that "the word around the compound was that [Mr. Penister] supposedly had told on Thornhill." *Id. at 13*. Mr. Penister did not tell any of the ADC Defendants about that conversation. *Id*.

Mr. Penister concedes that he did not have any reason to believe that inmate Houston was going to attack him on the date in question. *Id. at 9*. Before the incident, Mr. Penister never: (1) requested that inmate Houston be placed on his enemy alert list; or (2) felt threatened by inmate Houston. *Id. at 10, 11*. Mr. Penister also specifically admits that Defendant Brown did not know that inmate Houston was going to attack him on the date in question. *Id. at 17*.

5

### C. Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Mr. Penister's claims for money damages from the ADC Defendants in their official capacities are barred by sovereign immunity.

### D. Qualified Immunity

Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider whether: (1) the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).

A correctional official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "A failure-to-protect claim has an objective component, whether there was a substantial

risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Eighth Circuit Court of Appeals has recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. See *Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002); *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); and *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). "[B]ecause prisons are dangerous places, 'housing the most aggressive among us and placing violent people in close quarters,' . . . 'prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another.'" *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (internal citations omitted).

Based on the undisputed record evidence, Mr. Penister concedes that: (1) inmate Houston never previously threatened him; (2) he never notified any of the Defendants that his incarceration with inmate Houston posed a risk to his safety; (3) he never requested that inmate Houston be placed on his enemy alert list; (4) he did not witness Defendant Shipman sharing any information regarding the trafficking of

tobacco with any other ADC official or inmate[5]; (5) he did not notify any Defendant that another inmate told him that he had been identified as the inmate who had reported inmate Thornhill's conduct; and (6) he was surprised by inmate Houston's attack.

Mr. Penister has failed to present any evidence that he provided Defendants Cashion, Shipman, Lowe, or Brown with information or concerns sufficiently specific to create a reasonable inference that Mr. Penister faced a substantial risk of serious harm at the hands of inmate Houston. Nor is there evidence that any Defendant drew that inference or disregarded any serious risk of harm. Accordingly, these Defendants are entitled to qualified immunity.[6]

## IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 65*) be GRANTED, and Mr. Penister's claims against Defendants Cashion, Shipman, Lowe, and Brown be DISMISSED, with prejudice.

---

[5] In his declaration, Defendant Shipman testifies that, at the time Mr. Penister notified him about inmate Thornhill's conduct, ADC officials had already investigated inmate Thornhill and "[i]nmate Thornhill had already been caught trafficking contraband." *Doc. 65-2 at 1-2*.

[6] Because the Court concludes that Defendants are entitled to qualified immunity, the Court will not address Defendants' argument that Mr. Penister cannot hold Defendants liable based on respondeat superior.

2. Mr. Penister's claims against Defendant Thomas be DISMISSED, without prejudice, based on his failure to timely effectuate service on Defendant Thomas. See Fed. R. Civ. P. 4(m).

3. The Clerk be instructed to close this case.

DATED this 24th day of January, 2022.

_____
UNITED STATES MAGISTRATE JUDGE